IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GLORIA ESTRADA, | § | |
| | § | |
| v. | § | NO. A-05-CA-960 AA |
| | § | |
| JO ANNE B. BARNHART, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Brief (Clerk's Doc. No. 13); Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 16); and the Social Security Record filed in this case (Cited as "Tr.").

### I. PROCEDURAL HISTORY

Plaintiff Gloria Estrada ("Plaintiff") applied for Supplemental Security Income Benefits ("SSI") on February 12, 2003, alleging inability to work due to dysthymic disorder, adjustment disorder, depressive disorder, major depression, post traumatic stress disorder, heart disease, acid reflux, asthma, bronchitis, osteoporosis, and arthritis. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 12, 2005. The ALJ denied Plaintiff benefits in a decision issued June 16, 2005. Plaintiff appealed this decision to the Appeals Council and submitted additional evidence for review. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 16, 2005. On November 15, 2005, Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff disability benefits.

## II. ISSUES PRESENTED

Plaintiff contends that the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Plaintiff raises the following issues: 1) the ALJ failed to properly consider the treating doctor's opinions; and 2) the jobs suggested by the V.E. do not fit the limitations given by the ALJ; and 3) the ALJ's determination is not supported by substantial evidence and was not arrived at through the proper application of legal standards.

## III. STATEMENT OF THE CASE

Plaintiff contends that she has been disabled since November 1, 1998 due to dysthymic disorder, adjustment disorder, depressive disorder, major depression, post traumatic stress disorder, heart disease, acid reflux, asthma, bronchitis, osteoporosis, and arthritis. Plaintiff was represented at the hearing by an attorney. A medical expert and vocational expert testified at the hearing.

### A.   Plaintiff's Testimony

Plaintiff testified that she was born on July 9, 1954. Tr. 612. Plaintiff is divorced with three grown children. *Id.* Plaintiff stated she did not have a home and traded off living with her mother, daughter, sister, and other friends. Tr. 613. Regarding her educational background, Plaintiff completed the 10th grade and later got her GED. Tr. 612.

Regarding Plaintiff's alleged disabling conditions, she stated that the bone spurs on her feet are always painful. Tr. 616. As for arthritis, her left arm and shoulder are affected. *Id.* She testified that her right hand locks up on her and gets more and more swollen throughout the day. *Id.* Plaintiff stated that her arthritis pain is aggravated by cold, heat, changes in the weather, or walking on concrete. Tr. 617. She testified she was being treated for depression and taking Celexa, however,

the Center for Mental Health and Mental Retardation ("MHMR") released her. *Id.* Plaintiff also testified that she has a heart murmur and gets chest pains every once in a while when she is too stressed and in too much pain. Tr. 622-23. However, Plaintiff testified that she is scared of getting the chest pains, and, as a result, no longer pushes herself and tries to treat whatever pain she is experiencing. Tr. 623. Additionally, Plaintiff stated that most of the time her feet are swollen and full of pain. *Id.* Plaintiff testified that she had rheumatic fever from age 4-11 and lived in an oxygen tent. Tr. 624. Plaintiff also stated that she suffers from pain in her joints from her neck to her lower back. Tr. 625.

   As for Plaintiff's daily activities, Plaintiff testified that she does not do any yard work, sweeping, mopping, or vacuuming, however, she does help with the dishes, goes grocery shopping, and would cook if she were allowed to, even though she stated she burns food because she forgets about it. Tr. 614-15. Plaintiff stated that she does not visit with friends, but she goes to Alcoholics Anonymous meetings three or four times a week and goes to church almost every Sunday. Tr. 617-18. She testified that she cannot sit for very long, can only stand for five minutes at a time, and can only walk a block and a half at a time. Tr. 619. Plaintiff stated that she can lift less than 10 pounds. Tr. 619-20. Plaintiff testified that when she went to physical therapy from June to July of 2004, she would feel good when she was laying down being treated, but would feel bad again once she stood up. Tr. 620. Plaintiff stopped using crack and heroin in 2001, and had been sober for 95 days at the time of the hearing. Tr. 620-21. When Plaintiff sees her four grandchildren who live in Austin, the oldest of whom is 10, she helps take care of them. Tr. 622. Plaintiff has been in rehabilitation 3 times from 1976 to 1998. *Id.* Plaintiff suffers from fatigue every day and her energy level vacillates during the day. *Id.* The pain Plaintiff experiences makes it difficult for her to sleep and concentrate. *Id.*

625. Plaintiff testified that at the time of the hearing she was 5'4" and weight 190 pounds and had gained a lot of weight during the last year. Tr. 626.

Plaintiff takes Advere and Asthmacort for her asthma, Albuterol for bronchitis, Clonidine, Furosemide, and Mobic for her arthritis. Tr. 613.

**B.    Medical Expert's Testimony**

The medical expert ("M.E.") testified that Plaintiff had microstenosis caused by rheumatic fever. Tr. 627. In 2001 when she went to jail, she was diagnosed with congestive heart failure and they did a balloon valvoplasty. *Id.* The M.E. asserted that her heart failure improved, but she still has some microstenosis. *Id.* The M.E. stated that although Plaintiff was treated for depression, MHMR closed her case because of a history of non-compliance. Tr. 628. The M.E. also noted that Plaintiff has a history of substance abuse. *Id.* Additionally, the M.E. stated that Plaintiff had degenerative joint disease, arthritis, and a problem with her cervical spine. *Id.* The M.E. testified that Plaintiff had significant osteoarthritis in both toes and she was surprised the Plaintiff had not been given special shoes for this problem. Tr. 629. The M.E. testified that the medications Plaintiff was on at the time of the hearing would not typically cause any significant side effects. Tr. 632.

The M.E. determined that Plaintiff would be limited to light work because of the combination of her problems, but the M.E. was not sure what the effect of her feet problems would be given that light work requires 6 hours of standing per workday. Tr. 630.

**C.    Vocational Expert's Testimony**

The ALJ posed a hypothetical question to the V.E., which asked the V.E. to consider a hypothetical individual who was Plaintiff's age, who had completed 10th grade and then later obtained a GED, and had no past relevant work. Tr. 632. Additionally, the ALJ told the V.E. to assume the

person could lift and carry 20 pounds occasionally and 10 pounds frequently and could stand or walk for 30 minutes without interruption for a total of 4 hours of an 8 hour day. *Id.* The V.E. was also told the person could sit for 6 hours or an 8 hour day, could push and pull the amount of weight she could lift and carry, and must avoid concentrated exposure to smoke, dust, fumes, odors, and temperature extremes. Tr. 632-33. As a result of the pain the person experiences, she is limited to understanding, remembering, and carrying out routine step instructions, however, the person can respond appropriately to supervisors and co-workers and can do a job that does not require independent decision making. Tr. 633.

The V.E. stated that such a person would be limited to light, unskilled work and there are a little more than 1,500 such jobs. *Id.* The V.E. testified that if the person needs to change positions every 30 minutes and can only work standing for half of a work day, that that person could only perform 25% of the light, unskilled jobs that are available. *Id.* The V.E. stated that the person could perform assembly of small parts or products and there are about 150,000 of those jobs in the national economy and 15,000 in Texas. *Id.* The same is true of a cashier. Tr. 634. An additional job the person could perform would be as an assistant in an office setting; there are 120,000 such jobs nationally and 12,000 in Texas. *Id.*

The V.E. testified that the jobs as a cashier or assembly worker could be performed sitting or standing. Tr. 634-35. The V.E. agreed that the production expectations associated with all of the above-mentioned jobs could cause some stress, and having to change from sitting to standing every 5 minutes would affect the person's productivity. Tr. 635-36. The V.E. stated that missing two days of work per month would be the most an employer would tolerate and opined that most employers would not even permit missing 2 days a month. Tr. 637. The V.E. also testified that if the person

could perform frequent, but not constant, handling and fingering that would not affect the number of available jobs because those jobs all involve frequent (as opposed to constant) reaching, handling, and fingering. *Id.*

## B.     Medical Records

The following is a summary of Plaintiff's medical records which are relevant to the issues presented in the instant case. The relevant time period is February 12, 2003, when she applied for SSI, through June 16, 2005, the date of the final administrative decision. Plaintiff must demonstrate that she was under a disability on or before the date on of the final administrative decision, in order to receive SSI.

At the first relevant doctor's visit on April 22, 2003, Dr. Benbow performed a psychiatric evaluation on Plaintiff and determined Plaintiff had dysthemic disorder as a result of her insomnia, low self-esteem, and occasional feelings of hopelessness and polydrug substance dependence. Tr. 163. Dr. Benbow assessed Plaintiff with a GAF of 65-70, and stated that her prognosis was somewhat guarded. *Id.*

On April 30, 2003, Dr. Gilliland filled out a functional capacity assessment on Plaintiff and found that Plaintiff could "understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in routine work setting." Tr. 165-167. Dr. Gilliland found Plaintiff had dysthymic disorder and a substance addiction disorder. Tr. 169-72.

On April 8, 2003, MHMR's treatment plan was medication and counseling, and she was diagnosed with polysubstance dependence, dysthmic disorder, adjustment disorder, anxiety and

depression, depressive disorder, major depression, alcohol dependence, posttraumatic stress disorder, borderline personality disorder. Tr. 218-19.

On June 24, 2003, Dr. Robinson examined Plaintiff for the Disability Determination Division and found a heart murmur of moderate intensity. *Id.* Dr. Robinson determined she had mild hypertension. Tr. 176.

On July 15, 2003, Dr. Samaratunga conducted a residual functional capacity assessment on Plaintiff and determined that Plaintiff could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand, walk, or sit for 6 hours in an 8 hour workday, and her pushing and pulling was unlimited except for the limitations related to lifting and carrying. Tr. 179.

A psychological evaluation was conducted on Plaintiff on January 29, 2004. Tr. 246. The psychologist felt Plaintiff would have difficulty working at that time, and, based on Plaintiff's information, he diagnosed Plaintiff with major depressive disorder and polysubstance abuse. Tr. 248.

An x-ray of Plaintiff's feet on February 9, 2004, revealed a loss of joint space and a bone spur, but no acute fracture or dislocation. Tr. 294. On February 14, 2004, Dr. Reddy completed out a psychiatric evaluation of Plaintiff. Tr. 250. Dr. Reddy determined that Plaintiff had depressive disorder characterized by sleep disturbance, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of suicide. Tr. 253. Dr. Reddy also found Plaintiff had a substance addiction disorder. Tr. 258. On February 17, 2004, Dr. Reddy completed a mental residual functional capacity assessment of Plaintiff and found Plaintiff to be moderately limited in remembering detailed instructions, interacting with coworkers, and adapting to changes. Tr. 264-65.

On March 14, 2004, the Austin Community Health Center noted Plaintiff was not compliant. Tr. 282. An x-ray of Plaintiff's left foot revealed a loss of joint space, so the doctor decided to refer

Plaintiff to a foot specialist. *Id.*  An x-ray of Plaintiff's spine on April 2, 2004, showed advanced degenerative spondylosis. Tr. 292.  An x-ray of Plaintiff's left foot on July 7, 2004, revealed a small bone spur; an x-ray of her right foot showed a mild bone spur. Tr. 287-88.  Dr. Mayorga, a doctor at the Brackenridge Physical Therapy Clinic, diagnosed Plaintiff with spinal osteoarthritis and muscle weakness. Tr. 486.

On November 12, 2004, Plaintiff was discharged from MHMR because she was no longer eligible for services and noting that she has a history of non-compliance by not keeping scheduled appointments or taking all of the prescribed drugs.[1]  Tr. 353.  On January 11, 2005, an x-ray was done and compared to one taken in 2003, and it was determined that her heart size was now within normal limits and there was no evidence of any acute problem with her heart. Tr. 514.  Dr. Kumar determined that Plaintiff could work 20 hours a week without restrictions and 20 hours with restrictions of sitting, standing, walking for not more than 4 hours a day. Tr. 542.  Dr. Kumar also found Plaintiff's disability to not be permanent and would last 6 months or less. *Id.*

Dr. Hayes performed an echocardiogram on February 4, 2005, which showed that the left atrium was slightly enlarged, which confirms that Plaintiff has mild to moderate mitral valve stenosis. Tr. 553.  The notes of the cardiology clinic at Brackenridge Hospital on February 14, 2005, indicated that as a result of the echocardiagram, there was no need for further examinations of Plaintiff, and no indication that any invasive procedure was necessary to treat Plaintiff's mitral valve stenosis Tr. 563.

---

[1] Plaintiff took issue with the ALJ noting in his decision that MHMR had discharged Plaintiff for noncompliance, however, Plaintiff's history of noncompliance was clearly noted on the discharge summary.  *See* Plaintiff's Brief.

## IV.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

After review of the medical evidence, consideration of Plaintiff's testimony, the vocational expert's testimony as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  The ALJ determined that Plaintiff had severe impairments of mitral valve stenosis, arthritis, coronary arteriosclerosis, bones spurs on both feet, obesity, asthma, depression, and polysubstance abuse.  Tr. 16.  The ALJ pointed out that Plaintiff's primary symptomology during the relevant time period was due to degenerative joint disease and arthritis.  *Id.*  The ALJ found that Dr. Robinson's findings and the treatment records from 2003 do not substantiate Plaintiff's alleged functional limitations, because they indicate that Plaintiff's asthma, hypertension, and arthritic pain were normally controlled with medication.  *Id.*  The ALJ did not find the facts consistent with debilitating pain that would preclude her from having a competitive job.  *Id.*

The ALJ determined that the fact Plaintiff's pain did not necessitate analgesic pain medication or special shoes shows the record does not support a finding that Plaintiff cannot work because of her foot pain.  Tr. 18.  The ALJ found his conclusion was supported by the fact that Plaintiff's treating doctor noted in January of 2005 that Plaintiff could stand or walk 4 hours in a 4 hour workday and the doctor did not note that foot pain, asthma, or mitral valve stenosis would impact her ability to work.  *Id.*

The ALJ stated he discounted the treating doctor's opinion was because it was not supported by detailed findings, was inconsistent with the treatment records that showed significant improvement in her pain as a result of physical therapy, and inconsistent with Plaintiff's testimony that she takes care of a 3 year old and no longer uses prescription pain medication.  *Id.*  The ALJ also explained that

9

he discounted the treating doctor's opinion because it was based, in part, on Plaintiff's problems associated with depression. Tr. 19.

Although the ALJ found that Plaintiff's symptoms of depression would meet the criteria in Appendix 1, Subpart P, Regulations No. 4 and that Plaintiff's symptoms would meet the criteria of Medical Listing 12.09, the ALJ interpreted the evidence described by the M.E. to have substance abuse as a material factor. *Id.* The ALJ noted that now that Plaintiff has reduced her consumption of alcohol Dr. Benbow found that she only had dysthymic symptoms and had a GAF of 65 to 70. Thus, the ALJ determined that Plaintiff had not shown that she would still be disabled by depression even if she stopped using drugs and alcohol. *Id.*

The ALJ found Plaintiff had the residual functional capacity to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently, stand or walk 30 minutes without interruption and 4 hours total out of an 8 hour workday, and sit 6 hours per workday. *Id.* Because of Plaintiff's history of asthma and mitral valve stenosis, the ALJ found Plaintiff must avoid concentrated exposure to smoke, dust, fumes, odors, and temperature extremes. *Id.* The ALJ also stated he gave Plaintiff the benefit of the doubt regarding her complaints of hand pain and limited any possible work to that with frequent, but not constant, handling and fingering. *Id.*

The ALJ noted at the time of the decision Plaintiff was 50, which is denoted as closely approaching advanced age. *Id.* The ALJ determined that based on Plaintiff's residual functional capacity, she is capable of performing a significant range of light work. *Id.* Based on the V.E.'s testimony along with the facts known about Plaintiff, Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy. Tr. 21. Thus, the ALJ concluded Plaintiff was not disabled under the Social Security Act. *Id.*

### V.  STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) her age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).  However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174.  If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

### VI.  ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled,

11

and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520 (1999). First, the claimant must not be presently working at any substantial gainful activity.[2]  Second, the claimant must have an impairment of combination of impairments that is severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to her past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520.

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant acquits her responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets this burden, the claimant must then prove she in fact cannot perform the alternate work. *Id.*

**A.      Did the ALJ Improperly Disregard the Treating Doctor's Opinions?**

Plaintiff argues that the ALJ improperly failed to include the limitations assessed by a treating doctor in the ALJ's determination of Plaintiff's ability to be gainfully employed.[3]  In response,

---

[2] Substantial gainful activity is work activity that is both substantial and gainful. Substantial work activity is work activity that involves doing significant physical or mental activities. Gainful work activity is work activity that an individual performs for pay or profit. 20 C.F.R. 416.972.

[3] Plaintiff argues the treating doctor stated that she was limited to working a 4 hour day and was precluded from meeting the time and attendance demands of competitive work. Although the Court noted that the ALJ referenced the statement that the treating doctor said Plaintiff could not meet the time and attendance demands of competitive work, *supra* at 17-18, the ALJ did not provide a citation to the record for this statement. Plaintiff also relies on this statement by the treating doctor,

Defendant asserts that a treating doctor's opinion on whether or not a person is "disabled" is not a medical opinion and is not entitled to special significance.

### 1. The Law Regarding the ALJ's Consideration of Medical Opinions

The Social Security Regulations provide that all medical opinions are to be considered in determining the disability status of a benefits claimant. 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. *Id.* Additionally, the Commissioner "will not give any special significance to the source of an opinion on issues reserved to the Commissioner" including a claimant's residual functional capacity, which is a finding expressly reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(2) and (3).

The regulations break medical source opinions down into three general categories: non-examining, non-treating, and treating. 20 C.F.R. §§ 404.1502, 416.902. Non-examining sources are those whose assessments are premised solely on a review of medical records. *Id.* State agency medical consultants consulted by the ALJ fall into this category. *Id.* Non-treating sources are those who have examined the claimant, but who do not have "an ongoing treatment relationship" with same. *Id.* This "term includes an acceptable medical source who is a consultative examiner . . . when

---

but provides no record citation for it, but rather cites only to the ALJ's decision. For its part, Defendant also refers to the alleged opinion, but it only cites the Plaintiff's brief for the statement. The Court has scoured the record, and has been unable to locate this alleged statement by the treating doctor in the record. The Court requested both Plaintiff's and Defendant's counsel to provide a record citation, but neither were able to do so. Thus, this statement allegedly made by a treating doctor regarding Plaintiff not being able to meet the time and attendance demands of competitive work will not be included in the Court's analysis.

the consultative examiner is not [a claimant's] treating source." *Id.* Finally, medical sources who have had an "ongoing treatment relationship" with the claimant are regarded as treating sources. *Id.*

The Social Security Regulations provide guidelines for the consideration of expert medical opinions of a claimant's treating physician. Under 20 C.F.R. § 404.1527(d)(2), consideration of a treating physician's opinion must be based on:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole, and
> (6) the specialization of the treating physician.

*Newton v. Apfel,* 209 F.3d 448, 456 (5th Cir. 2000) (citing 20 C.F.R. § 404.1527(d)(2)); *accord Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001); *see also* 20 C.F.R. 416.927(d)(2). SSR 96-2p provides:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. *Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.* In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted even if it does not meet the test for controlling weight.

*Newton,* 209 F.3d at 456 (emphasis in original). Similarly, 20 C.F.R. § 416.927(f)(2)(ii) specifies that, when an ALJ fails to accord controlling weight to treating sources, the weight ascribed to the various treating, non-treating, and non-examining sources must all be explained. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii); *see also* SSR 96-2p at *5; SSR 96-5p at *6.

With respect to residual functional capacity assessments and medical source statements, SSR 96-5p provides that "'[a]djudicators must weigh medical source statements under the rules set out

in 20 C.F.R. § 404.1527 . . . , providing appropriate explanations for accepting or rejecting such opinions.'" *Id.*; *see also* 20 C.F.R. § 416.927. SSR 96-5p additionally provides that "[i]n evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 C.F.R. 404.1527(d) and 416.927(d)." Indeed, the majority of courts, including the Fifth Circuit, have concluded that an ALJ must consider each of the § 416.927(d) factors before rejecting or affording little weight to a treating physician's opinion. *See Newton,* 209 F.3d at 456; *see also Myers,* 238 F.3d at 621.

### 2. Did the ALJ Consider the 20 C.F.R. § 404.1527(d)(2) Factors?

As stated above, a claimant's residual functional capacity is an issue reserved to the Commissioner. 20 C.F.R. § 416.1527(2). The Commissioner is not required to give any special significance to a treating physician's expert opinion on issues reserved to the Commissioner. 20 C.F.R. § 416.1527(3). The Fifth Circuit has held that the six factors in 20 C.F.R. § 416.1527(2) only apply to medical opinions given by treating physicians and opinions such as the plaintiff is disabled or unable to work can be rejected without analyzing them pursuant to 20 C.F.R. § 416.1527(2). *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Where the treating doctor's opinion is based on vocational, rather than medical, considerations, such as "minimal education" and lack of sophistication, do not have to be given substantial weight by the ALJ. *Loya v. Heckler*, 707 F.2d 211, 214 (5th Cir. 1983). However, a treating physician's opinion about whether their patient can perform light work or manual labor is a statement about physical capacity and is considered a medical opinion. *Id.*

It is well-settled that the opinion of a treating physician should be accorded great weight in determining disability. *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000). However, the Fifth

15

Circuit has held that where good cause is shown, a treating physician's opinion can be given limited or no weight if the opinion is not supported by the evidence. *See Myers v. Apfel,* 238 F.3d 617, 621 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)).  A treating doctor's opinion is not considered to be supported by the evidence and can be rejected for good cause where the treating physician's statements is brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, are contradicted by other evidence, or where the record contains contradictory opinions from other non-examining or non-treating physicians. *Washington v. Barnhart*, 413 F.Supp.2d 784, 798 (E.D. Tex. 2006). Neither the regulations nor the case law requires the ALJ to specifically enumerate and discuss each factor; the requirement is merely for the ALJ to consider the six factors. *Witz v. Comm'r of Social Sec. Admin.*, 412 F.Supp.2d 601, 608 (E.D. Tex. 2005).

In this case, Dr. Kumar, a treating physician, found Plaintiff could work 20 hours a week without restrictions and 20 hours a week with restrictions, and that she could not sit, stand, walk, climb, kneel, bend, push, pull, type, lift, or carry 20 pounds for more than 4 hours a day. Tr. 542. Dr. Kumar also noted that she found the disability was not permanent and was expected to last 6 months or less. *Id.* Plaintiff argues that her treating physician stated she could only work half days, however, the record is not consistent with this interpretation, since Dr. Kumar indicated Plaintiff could work a half day without restrictions and a half day with restrictions. *Id.* Additionally, the ALJ's determination of Plaintiff's residual functional capacity is that she can lift, carry, push, or pull 20 pounds occasionally, stand or walk 30 minutes without interruption and only 4 hours out of a 4 hour workday. Tr. 19. That is entirely consistent with Dr. Kumar's assessment. The only thing that is not consistent

16

is that the ALJ found Plaintiff could sit for 6 hours, whereas Dr. Kumar stated she could only sit for 4 hours during a workday. Tr. 19, 542.

If this 2 hour time difference is considered a rejection of the treating doctor's opinion, the Court notes that Dr. Kumar's conclusion was not accompanied with any explanation; the Court only saw Dr. Kumar's name on two other pages in the medical record, so his treatment of her, if any, must have been very limited; and the ALJ and M.E. commented at the hearing that it was very strange that Dr. Kumar stated Plaintiff's primary diagnosis was depression, because she was not being treated for that at the time the form was filled out, and the only other problem Dr. Kumar mentioned was joint pain, despite Plaintiff's numerous other complaints. Tr. 542, 629-30. Thus, the ALJ had good cause to question the opinion of this treating physician.

The only other documents in the record that mention specific numbers regarding Plaintiff's residual functional capacity are an assessment by a non-examining physician and limited notes from Plaintiff's physical therapy sessions that took place over one month in 2004. The non-examining doctor determined in July of 2003 that Plaintiff could lift or carry 50 pounds, frequently lift or carry 25 pounds, and stand, walk, or sit for 6 hours in an 8 hour workday. Tr. 179. Thus, Dr. Kumar's and the ALJ's assessment of Plaintiff's capabilities were more conservative overall than that of the non-examining doctor's. The summary from Plaintiff's physical therapy with Dr. Mayorga, a treating physician that Plaintiff saw more frequently than Dr. Kumar, stated that Plaintiff could only lift 5 pounds at the beginning and her goal for the 4 weeks was to be able to lift and carry 10 pounds, although it is unclear what progress was made. Additionally, Plaintiff was trying to increase the time she was sitting or standing without interruption and without pain from 10 minutes to 30 minutes in 4 weeks, however, she was only able to extend the time to 20 minutes. *Id.* The ALJ stated Plaintiff was

capable of standing for 30 minutes without interruption. Tr. 19. The notes from Plaintiff's physical therapy did not consider how long she could sit during the entire workday, so they are not particularly helpful in determining how long Plaintiff could sit over the duration of the entire workday. It should be noted that after the physical therapy the medical records show Plaintiff stopped taking her medication for arthritis pain, and although she did continue to complain of heel pain, she was not prescribed any more medication for it.

In explaining his rejection of Dr. Kumar's opinion, the ALJ noted that Plaintiff stated she was no longer using prescription pain medication, which does not support a finding of debilitating pain or support a finding that Plaintiff could not perform the demands of a limited range of light work. Tr. 18. The ALJ also noted that the treating physician's opinion was based in part on symptoms associated with depression, and substance abuse appeared to be a material factor in Plaintiff's depression. Tr. 19. Plaintiffs who abuse drugs and alcohol bear the burden of proving that drug and alcohol addition is not a contributing factor material to their disability. *Brown v. Apfel*, 192 F.3d 492, 498-99 (5th Cir. 1999). At the time of the hearing, on April 12, 2005, Plaintiff testified that she had been sober for 95 days. Tr. 621. Plaintiff did not meet her burden of showing that her alcohol abuse is not a material factor in her depression.[4]

Although the ALJ did not explicitly mention each factor in rejecting Dr. Kumar's opinion, the ALJ discussed his reasons why he did not believe that the medical evidence did not support the doctor's opinion, so the ALJ specifically addressed factors (4) and (5). As the Court noted, the treatment history of Dr. Kumar was very limited and Dr. Kumar's specialization as an internist, is not related to depression and joint pain, the only two problems he diagnosed Plaintiff as having. Since

---

[4]And, in fact, there are multiple places in the record where doctors advised Plaintiff to stop drinking or avoid alcohol, so they clearly thought it was having an impact on Plaintiff.

these factors weigh against the weight that should be given to Dr. Kumar's opinion, the "harmless error rule" applies to the ALJ not explicitly mentioning factors (1)-(3) and (6). *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969); *Zeno v. Barnhart*, No. 1:03-CV-649, 2005 WL 588223, at *5 (E.D. Tex. Feb. 4, 2005). Thus, the ALJ's rejection of Dr. Kumar's opinion was supported by substantial evidence.

**B.     Are the Proposed Jobs Consistent with the Limitations?**

Plaintiff argues that the jobs the ALJ found her capable of performing are not restrictive enough given the limitations the ALJ found Plaintiff to have. Specifically, Plaintiff alleges that a cashier has to constantly, rather than frequently, finger and handle items, so Plaintiff would not be capable of performing a job as a cashier II.[5] Additionally, Plaintiff argues that interpersonal contact is integral to working as a assembler, cashier, and office helper, so she would be incapable of doing these jobs.

An ALJ may properly rely on the testimony of a vocational expert as long as the hypothetical given to the vocational expert by the ALJ reasonable incorporates all of the disabilities that the ALJ has found the plaintiff to have and the plaintiff or his representative were given the opportunity to correct any problems by questioning the vocational expert. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). Plaintiff's argument that the jobs do not include the limitation of incidental interpersonal contact will be construed as an argument that the hypothetical was improper, since this limitation was

---

[5]The V.E. was specifically asked by the ALJ if the number of available jobs would be reduced by the fact that Plaintiff could frequently, but not constantly, finger and handle items. Tr. 637. The V.E. stated that the three jobs the V.E. identified have "frequent" in their job description. *Id.* Plaintiff attached the job descriptions, and the Court notes that the description for an assembler includes "frequently" in the description and none of the descriptions use the word "constantly," however, the job descriptions for cashier and office helper do not use either the words "frequently" or "constantly." *See* Plaintiff's Brief, Attachment. Although this is not integral to the Court's analysis in this order, the Court points this out in the event it relevant on remand.

19

not included in the hypothetical. The hypothetical included a statement that the person could respond appropriately to supervisors and co-workers, however, the ALJ did not state that the person could only work in an environment where interpersonal contact was only incidental to work performance. Clearly, the ALJ failed to include in the hypothetical a limitation that he had determined Plaintiff had, so the hypothetical was improper and the ALJ could not rely on the V.E.'s opinion as substantial evidence. *See Bowling*, 36 F.3d at 436-38.

Since the ALJ relied on the V.E.'s opinion and found there were jobs in significant numbers on this basis and the fact that the limitation that was not included could easily have changed the V.E.'s determination, the Commissioner has clearly not met her burden. Thus, the case should be remanded.[6]

## VII. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, the final decision of the Commissioner is **REVERSED** and the case **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).[7] Judgment shall be entered in favor of Plaintiff.

SIGNED this 12th day of May, 2006.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

---

[6] Since the Court finds that the ALJ's decision is not supported by substantial evidence because the hypothetical was improper, the Court need not, and will not, address the broader question of whether the decision as a whole was supported by substantial evidence.

[7] A "sentence four" remand is appropriate where the district court enters a judgment affirming, modifying or reversing the Commissioner's decision, with or without remanding the cause for a rehearing. *See Johnson v. Barnhart*, 285 F.Supp.2d 899, 915 (S.D. Tex. 2003).